IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| M.W. by and through his Parent and natural Guardian, MAURICE W., and MAURICE W. in his own right, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 18-856 (MN) ) ) |
| CAREY LYNCH, in her official and individual capacities, et al., | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Peter L. Frattarelli, Kevin F. Shaw, ARCHER & GRENIER, P.C., Wilmington, DE – Attorneys for Plaintiffs

Stephen M. Ferguson, Kenneth L. Wan, STATE OF DELAWARE, DEPARTMENT OF JUSTICE, Wilmington, DE – Attorneys for Defendants

October 13, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the partial motion of Defendants Carey Lynch ("Lynch"), Thomas Harris ("Harris"), and unknown Division of Youth and Rehabilitative Services defendants (including an unknown security guard, "Doe Security Guard"; together, "the Doe Defendants") to dismiss (D.I. 20) the Second Amended Complaint of Plaintiff M.W., by and through his Parent and natural Guardian, Maurice W., and Plaintiff Maurice W. in his own right (D.I. 14). The motion has been fully briefed (D.I. 20, 23, 40). For the reasons set forth below, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' motion.

## I.     BACKGROUND

### A.     Factual Background

M.W. is a developmentally disabled person, who at the time of the filing of the original complaint, was a minor. Maurice W. is his father. At relevant times in May and early June 2018, M.W. was sixteen years old and in the custody of the State of Delaware at the William Marion Stevenson House Detention Center ("Stevenson House") in Milford, Delaware. (D.I. 14 ¶¶ 18–20, 22). Stevenson House is a facility operated by the State of Delaware Department of Services for Children, Youth and their Families, in the Division of Youth Rehabilitative Services ("DYRS") for minors detained by the State for charges of delinquency, but who have not yet been adjudicated. (*Id.* ¶ 21).

Plaintiffs allege that Doe Security Guard, while working at Stevenson House, put a bounty called a "coupon" on M.W. (*Id.* ¶ 31). This bounty encouraged other detained youths to attack and intimidate M.W. (*Id.* ¶ 32). After Doe Security Guard placed the coupon on M.W., two boys in Stevenson House attacked M.W. (*Id.* ¶ 33). M.W. brought this attack to the attention of Lynch,

a DYRS employee at Stevenson House. (*Id.* ¶¶ 9, 34). M.W. expressed fear for his safety, but Lynch did not act upon M.W.'s concerns. (*Id.* ¶¶ 34–35).

In late May of 2018, M.W. was in a common area of Stevenson House and observed Lynch speaking to Doe Security Guard. (*Id.* ¶ 36). After Lynch left the common area, Doe Security Guard turned to the detained youths in the common area and announced that M.W. was likely to be released from Stevenson House soon, and anyone who was "gonna do anything" to M.W. would have to do so before M.W.'s imminent release. (*Id.* ¶ 39). Thereafter, two boys knocked M.W. to the ground and repeatedly punched him and kicked his head. (*Id.* ¶¶ 40, 44–46).

The next day, employees of DYRS took M.W. to have his injuries examined. (*Id.* ¶ 49). M.W.'s teeth were chipped, and X-rays revealed that he had a broken finger. (*Id.* ¶¶ 50, 54). Plaintiffs allege that Defendants did not provide M.W. with a splint for his broken finger until days after his medical examination. (*Id.* ¶ 53). They did not "provide any medical treatment to M.W. for his chipped teeth, and did not seek any medical treatment for any other injuries . . . ." (*Id.* ¶ 54). On or around June 5, 2018, M.W. was released from Stevenson House into the custody of his father, Maurice W. (*Id.* ¶ 29). Plaintiffs allege that no one had informed Maurice W. of the attacks on his son. (*Id.* ¶ 55). Maurice W. became aware of the violent incidents only when M.W. was released into his custody. (*Id.* ¶ 56).

B.  **Procedural History**

On June 7, 2018, Plaintiffs filed their initial complaint *pro se*. (D.I. 2). In that complaint, Plaintiffs alleged that Defendants violated their constitutional rights and committed various state law torts against them. (*Id.*). On November 15, 2018, the Court granted Plaintiffs' request for counsel (D.I. 9), and on December 7, 2018, the Court recognized that Peter L. Frattarelli and S. Alexander Faris agreed to represent Plaintiffs (D.I. 10). On March 8, 2019, Plaintiffs filed an

amended complaint. (D.I. 12). On April 11, 2019, Plaintiffs filed their Second Amended Complaint. (D.I. 14).

The Second Amended Complaint alleges eleven counts against Lynch, Harris,[1] and the Doe Defendants in each of their official and individual capacities. Plaintiffs allege six claims, arising under 42 U.S.C. § 1983, for violations of M.W.'s Fourteenth Amendment due process rights: special relationship (Count I), state-created danger (Count II), conspiracy (Count III), failure to prevent violent attack (Count IV), and failure to intervene ("Count VI")[2] against all Defendants; and failure to supervise (Count V) against Harris. Plaintiffs also allege five state law tort claims: negligence ("Count VII") and negligent infliction of emotional distress ("Count IX") against all Defendants; and intentional infliction of emotional distress ("Count VIII"), assault ("Count X"), and battery ("Count XI") against Lynch and Doe Defendants.

On December 19, 2019, Defendants filed the instant partial motion to dismiss the Second Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

### A. Stating a Claim

To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a). When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court

---

[1] Plaintiffs allege that Harris is Lynch's supervisor at DYRS. (D.I. 14 ¶ 10). Defendants dispute this assertion. (D.I. 20 ¶ 23 n.2).

[2] The Second Amended Complaint lists failure to intervene as a second Count V. To avoid confusion, the Court has renumbered the counts following Count V.

separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id*. at 210–11.  Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).  Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

### B.     Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.

CONST. amend. XI.  The Supreme Court has consistently interpreted the Eleventh Amendment to mean that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663–64 (1974). This sovereign immunity applies to cases brought against state officials if "the action is in essence one for the recovery of money from the state" and "the state is the real, substantial party in interest." *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents*, 535 U.S. 613, 622–23 (2002) (holding that a state waives sovereign immunity when it removes a case to federal court).

### C. 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides plaintiffs with a federal forum to seek relief against any "person" who, under color of state law, deprives plaintiffs of any "rights, privileges, or immunities" under federal law.  42 U.S.C. § 1983.  Courts interpret 42 U.S.C. § 1983 consistently with the Eleventh Amendment.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64–66 (1989) (holding that a state is not a "person" within the meaning of § 1983 and observing that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal–state balance in that respect").  Although the Eleventh Amendment bars suit against state officials in their official capacity, a plaintiff under § 1983 can seek injunctive and monetary relief against state officials sued in their personal capacity for violating the plaintiff's federal rights.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

### III. DISCUSSION

#### A. Federal § 1983 Claims

Plaintiffs "concede that the Eleventh Amendment bars . . . their federal claims against Defendants in their official capacities."  (D.I. 23 at 6 n.1).  Thus, the claims against Defendants in

their official capacities are dismissed as unopposed. The Court proceeds to consider the federal claims against Defendants in their personal capacities.

### 1.     Special Relationship (Count I) and State-Created Danger (Count II)

Plaintiffs assert that all Defendants are liable under special-relationship and state-created danger theories of liability. Defendants move to dismiss these claims as to Harris only. (D.I. 20 ¶ 10).

When a state limits a child's freedom to act on his own behalf, such as by placing a child in foster care, "the state has entered into a special relationship with that child which imposes upon [the state] certain affirmative duties." *Nicini v. Morra*, 212 F.3d 798, 808 (3d. Cir. 2000) (en banc). Under Third Circuit law, the state is liable under a special-relationship theory if it breaches these affirmative duties with deliberate indifference. *Id*. at 811. An officer is deliberately indifferent if he is aware of an excessive risk of harm to the plaintiff and disregards that risk. *Id.* at 810–11.

To state a claim of state-created danger in violation of the Fourteenth Amendment, the plaintiff must plead that: "(1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." *Estate of Smith v. Marasco*, 318 F.3d 497, 506 (3d Cir. 2003).

As to Harris, Plaintiffs' pleadings are insufficient to state a claim that Harris is liable under a special-relationship theory. Plaintiffs make only two factual allegations about Harris: that Harris supervised Lynch at all relevant times, and that Harris knew about the gang-related violence at Stevenson House. (D.I. 14 ¶¶ 10, 26). Plaintiffs, however, fail to allege that Harris knew about

6

the specific risk of harm facing M.W. Plaintiffs also fail to plead facts about Harris's response to his knowledge about gang violence, or the appropriateness of any such response. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001) (holding that a supervisor is deliberately indifferent when he fails to respond appropriately in his role, in that case, as a policymaker). Plaintiffs do not address Harris's response to M.W.'s concerns and eventual harm at all. Thus, Plaintiffs fail to state a claim of special-relationship liability as to Harris.

Similarly, Plaintiffs fail to state a claim that Harris is liable under a state-created danger theory because Plaintiffs have not pleaded that Harris acted in willful disregard of M.W.'s safety and used his authority to create an opportunity for the other detainees to violently attack M.W. Thus, both the special-relationship and state-created danger claims are dismissed as to Harris.

### 2. Conspiracy (Count III)

Plaintiffs allege Count III for conspiracy against all Defendants based on allegations that Defendants Lynch and Doe Security Guard entered into a conspiracy to deprive M.W. of his right to personal liberty and protection while in the custody of the state. (D.I. 14 ¶ 84). Defendants move to dismiss this claim in its entirety. (D.I. 20 ¶ 10).

To state a claim of conspiracy in violation of § 1983, a plaintiff must allege that defendants acting under state law conspired to, and did in fact, deprive the plaintiff of constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). To survive a motion to dismiss, a plaintiff alleging unconstitutional conspiracy "must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). In particular, the complaint "must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989).

7

"[I]n the absence of direct proof, that 'meeting of the minds' or 'understanding or agreement to conspire' can be inferred from circumstantial evidence." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)) (internal quotation marks omitted).

Here, Plaintiffs fail to plausibly allege a conspiracy between Doe Security Guard and Lynch. Plaintiffs contend that Lynch informed Doe Security Guard that M.W. would soon be released from Stevenson House and then left the common area. (D.I. 14 ¶¶ 38, 85). The allegation that Doe Security Guard incited the attack on M.W. after speaking to Lynch does not support the plausible inference that Lynch had conspired with Doe Security Guard to cause this attack, in violation of M.W.'s constitutional rights. *See Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (affirming dismissal of judicial-conspiracy claim based on plaintiff's allegation that she saw two judges discussing her case shortly before one of the judges ruled against plaintiff).

Plaintiffs also do not allege that any other Defendants were part of a conspiracy to violate M.W.'s constitutional rights. Thus, the conspiracy claim is dismissed.

### 3. Failure to Prevent Violent Attack (Count IV)

Plaintiffs allege that all Defendants violated M.W.'s due process rights by failing to protect M.W. from violence at the hands of detainees in Stevenson House. Defendants move to dismiss this claim as to all Defendants.[3] (D.I. 20 ¶ 10). Plaintiffs, however, have alleged sufficient facts to maintain this failure-to-protect claim against Lynch and Doe Security Guard.

---

[3] Defendants correctly note that under the "Count IV" heading the Second Amended Complaint only discusses Defendants' failure to provide M.W. with medical treatment after the attack. (D.I. 20 ¶ 28). Plaintiffs, however, incorporate by reference other allegations that support their claim, and the Court considers these facts to decide whether the failure-to-protect claim is well-pleaded.

The Eighth Amendment protects prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To state a claim that defendants failed to protect a plaintiff from violence by other prisoners, the plaintiff must plead that a substantial risk of serious harm existed, defendants were deliberately indifferent to such risk, and plaintiff was indeed harmed. *Id.* at 834. Under the deliberate indifference standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The rights of pre-trial detainees to be protected from violence in detention arise from the Fourteenth Amendment. *A.M. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004). The Third Circuit, however, applies the same standards to failure-to-protect claims arising under the Fourteenth Amendment as under the Eighth Amendment. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014).

Plaintiffs plausibly allege a failure-to-protect claim against Lynch and Doe Security Guard. Plaintiffs allege that Stevenson House was plagued by gang-related violence because some youths detained at Stevenson House await adjudication of violent crime charges. Furthermore, M.W. had been physically attacked by detained youths once before. These facts plausibly establish a substantial risk of serious harm. Plaintiffs also plausibly allege that these Defendants knew that M.W. faced this substantial risk of harm and were deliberately indifferent to it. Doe Security Guard allegedly put the coupon on M.W., and thus knew and failed to respond to – indeed, encouraged – the danger to M.W. Lynch also allegedly knew about the substantial risk of harm to M.W. because M.W. told her about the first attack he suffered. Plaintiffs allege that Lynch did not act upon this knowledge, which supports the reasonable inference that Lynch was deliberately indifferent to the risk.

Plaintiffs, however, fail to state a failure-to-protect claim against Harris. As discussed with respect to Counts I and II (*see supra* Section III.A.1), Plaintiffs allege only that Harris knew about gang violence at Stevenson House generally. They do not allege that he knew of any specific risk of harm facing M.W. or that any response to his alleged knowledge about gang violence at Stevenson House was not appropriate. *See Beers-Capitol*, 256 F.3d at 135. Thus, the claim of failure-to-protect is dismissed as to Harris.

### 4.     Failure to Intervene (Count VI)

Plaintiffs allege that all Defendants violated M.W.'s constitutional rights by failing to intervene in the attack on M.W. Defendants move to dismiss this claim against Lynch and Harris. (D.I. 20 ¶ 10). Based on Plaintiffs' allegations, the failure-to-intervene claim survives against Lynch, but must be dismissed as to Harris.

"[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). Pre-trial detainees are protected by the Fourteenth Amendment, but "are entitled to no less protection than a convicted prisoner is entitled to under the Eighth Amendment." *A.M.*, 372 F.3d at 584.

The Second Amended Complaint states that Lynch left the common area before Doe Security Guard incited the attack on M.W. Plaintiffs also allege, however, that Lynch was still present at Stevenson House at or around the time of the attack on M.W. Plaintiffs state that "Defendants each had a reasonable opportunity to intervene, as each was present at or near the time of the attack, and time elapsed between the order given by John Doe Security Guard and the beginning of the attack on M.W." (D.I. 14 ¶ 115). Accepting these allegations as true and drawing

all reasonable inferences in Plaintiffs' favor, it is plausible that Lynch, despite having just left the common area, had a reasonable opportunity to intervene and refused to do so. Thus, the claim against Lynch survives, at least, this motion to dismiss.

By contrast, Plaintiffs provide only general, conclusory allegations as to Harris's whereabouts and wherewithal to intervene at the time of the attack. Without more, a reasonable factfinder cannot infer that Harris had a reasonable opportunity to intervene and refused to do so. The claim is thus dismissed as to Harris.

### B. State Law Tort Claims

#### 1. Qualified Immunity

Plaintiffs' remaining claims against Defendants arise under state law. Defendants argue that these claims must be dismissed because all Defendants have qualified immunity.[4]

Under the Delaware Tort Claims Act, 10 Del. C. § 4001, state employees are exempt from civil liability based on negligence if three criteria are met: "The act or omission complained of (i) arose out of and in connection with official duties involving the exercise of discretion; (ii) was performed in good faith and in the belief that the public interest would be best served thereby; and (iii) was performed without gross and wanton negligence." *Smith v. Angelo*, Civil Action No. 14-1066-GMS, 2017 WL 2276985, at *10 (D. Del. May 25, 2017).

Here, Plaintiffs have pleaded sufficient facts to overcome the Tort Claims Act bar. Plaintiffs allege that Doe Security Guard placed a "bounty" on M.W., which the Court understands

---

[4] Defendants also assert that the state law claims are barred by sovereign immunity. Sovereign immunity, however, "does not apply to state employees sued for their own conduct." *See Parker v. Wireman*, No. CIV.A. 09C-02-027JTV, 2012 WL 1536934, at *2 (Del. Super. Ct. Apr. 30, 2012); *see also Slinger v. New Jersey*, 366 F. App'x 357, 361 (3d Cir. 2010) (holding that Eleventh Amendment did not bar state law tort claims asserted in federal court against state officials in their individual capacities). Thus, the Court focuses on Defendants' assertion of qualified immunity.

11

to be "a premium or benefit offered or given, esp[ecially] by a government, to induce someone to take action or perform a service." *Bounty*, BLACK'S LAW DICTIONARY (11th ed. 2019). Further, Doe Security Guard allegedly told the detained youths in the common area that they would have to act quickly to "do anything" to M.W. before M.W. was released. It can be reasonably inferred that these actions represent "an extreme departure from the ordinary standard of care," amounting to gross negligence. *Thomas v. Bd. of Educ. Of Brandywine Sch. Dist.*, 759 F. Supp. 2d 477, 501 (D. Del. 2010).

Furthermore, it is plausible based on the allegations in the Second Amended Complaint that Defendants violated non-discretionary duties in their conduct toward M.W. Lynch knew that M.W. had been attacked previously, and allegedly did not act upon this knowledge. After the second attack on M.W., Defendants left M.W.'s known injuries untreated for days. Defendants also neglected to tell M.W.'s father about the attacks. Dismissing Plaintiffs' state law claims would be premature, as Plaintiffs should be allowed to take discovery to determine whether Defendants' omissions violated mandatory rules or policies and thus remove Defendants from the scope of tort immunity. *See J.L. v. Barnes*, 33 A.3d 902, 914–15 (Del. Super. Ct. 2011) (acknowledging need for discovery to determine whether DYRS employee defendants breached ministerial duties).

Because Plaintiffs' pleadings overcome the immunity conferred by the Tort Claims Act, the Court will proceed to analyze the state law claims for sufficiency of pleading.

### 2. Intentional and Negligent Infliction of Emotional Distress (Counts VIII and IX)

Plaintiffs assert claims of intentional and negligent infliction of emotional distress against Defendants, on behalf of both M.W. and Maurice W. Defendants move to dismiss these claims as to Maurice W. because he was not present at the time of the attacks on M.W. (D.I. 20 ¶¶ 18–20).

To state a claim of negligent infliction of emotional distress, a plaintiff must allege: "(1) negligence causing fright to someone[ ] (2) in the zone of danger[,] (3) producing physical consequences to that person as a result of the contemporaneous shock." *Doe v. Green*, C.A. No. 06C-04-005 ESB, 2008 WL 282319, at *1 (Del. Super. Ct. Jan. 30, 2008). Similarly, a claim of intentional infliction of emotional distress requires that the defendant "intentionally or recklessly causes severe emotional distress to another" "by extreme and outrageous conduct." *Id* at *2 (citing Restatement (Second) of Torts § 46). A defendant may be liable to a third party "who is present at the time" of the defendant's extreme and outrageous conduct toward the third party's immediate family member. *Id.*

Plaintiffs cite several cases where a family member was able to maintain a claim of intentional infliction of emotional distress despite not having been present at the time of the allegedly tortious conduct. These cases, however, are readily distinguishable from the instant case. In *Farmer v. Wilson*, a father was not barred from asserting a claim of intentional infliction of emotional distress against school officials who took his daughter out of school without his knowledge or consent. Civ. A. No. 91C-09-023, 1992 WL 331450, at *4 (Del. Super. Ct. Sept. 29, 1992) (granting summary judgment because defendants lacked intent to cause emotional distress). In *Farmer*, the father claimed to be the direct victim of extreme and outrageous conduct, not a bystander to the distress of his daughter, and thus his presence was not a required element of the claim. *See Cooper v. Bd. of Educ. of Red Clay Consol. Sch. Dist.*, No. C.A. No. 08C-09-164 PLA, 2009 WL 3022129, at *2 (interpreting *Farmer* as asserting a direct intentional infliction of emotional distress claim); *see also Fanean v. Rite Aid Corp. of Del., Inc.*, 984 A.2d 812, 819 (Del. Super. Ct. 2009) (denying motion to dismiss intentional infliction of emotional distress claim,

13

despite plaintiff's absence, where defendant pharmacy disclosed plaintiff's confidential health information to plaintiff's relatives, directly causing emotional damage to plaintiff).

Here, Plaintiffs' allegations situate M.W. as the direct victim of Defendants' alleged extreme and outrageous conduct, and Maurice W. as an indirect victim. Thus, for a claim of intentional infliction of emotional distress, Maurice W. had to have been "present at the time" of the tortious conduct. *Doe*, 2008 WL 282319, at *2. Furthermore, Plaintiffs make no specific arguments to overcome the "zone of danger" requirement for a negligent infliction of emotional distress claim, and thus, both claims as asserted by Maurice W. are dismissed.

### 3. Assault (Count X) and Battery (Count XI)

Plaintiffs assert claims of assault and battery against Lynch and Doe Defendants. Defendants move to dismiss the two claims in their entirety. (D.I. 20 ¶¶ 21–22).

To state a claim of assault, a plaintiff must plead that the defendant acted with the intent to cause imminent apprehension of harmful or offensive contact, and the plaintiff was put in such imminent apprehension. *Jagger v. Schiavello*, 93 A.3d 656, 660 n.12 (Del. Super. Ct. 2014). A claim of battery requires that the defendant acted with the intent to cause a harmful or offensive contact with the plaintiff, and harmful contact with the plaintiff directly or indirectly resulted. *Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995).

Defendants argue that Plaintiffs' "assault and battery claim" must fail because Plaintiffs do not allege that any Defendant assaulted M.W. This argument improperly treats assault and battery as a single tort requiring physical contact with the plaintiff. Assault requires apprehension of imminent contact, which Plaintiffs plausibly allege. Doe Security Guard allegedly placed a bounty on M.W. and incited the detained youths of Stevenson House to attack M.W. Based on these acts alone, it can be reasonably inferred that Doe Security Guard intended to place M.W. in fear of

14

imminent harm, and M.W. indeed apprehended this harm.  Thus, Plaintiffs have adequately pleaded assault against Doe Security Guard.

Plaintiffs also state a claim of battery against Doe Security Guard.  It can be reasonably inferred that Doe Security Guard acted with the intent to cause M.W. harm, not merely the apprehension thereof.  This harm to M.W. transpired indirectly at the hands of other detained youths, which is sufficient to satisfy the second element of battery.  Defendants argue that Defendants are not liable for battery because the harmful contact was committed by the youths, and Defendants were not in a principal–agent relationship with them.  The principal–agent inquiry is relevant to claims of vicarious liability, where plaintiffs seek to hold an absent employer liable for the torts committed by employees while in the scope of their employment.  *See Fisher v. Townsends, Inc.*, 695 A.2d 53, 57–61 (Del. 1997) (discussing, at length, factors and rationales for vicarious liability).  This argument, however, is inapposite when a defendant incentivized and thus indirectly caused harmful contact to the plaintiff, as is the case here.

Plaintiffs have not alleged facts to support plausible claims of assault and battery against the remaining Defendants.  Therefore, the claims are dismissed as to all Defendants except Doe Security Guard.

## IV. CONCLUSION

For the foregoing reasons, Defendant's partial motion to dismiss is GRANTED-IN-PART and DENIED-IN-PART.  Counts I, II, IV, and VI are dismissed as to Defendant Harris.  Count III is dismissed in its entirety.  Counts VIII and IX, as asserted by Plaintiff Maurice W., are dismissed.  Count X and XI are dismissed as to Defendant Lynch.

An appropriate order will follow.

15